## FRITZ ROCHETSZKY V. THE STATE.

No. 7504.   Decided May 23, 1923.

**1.—Intoxicating Liquor—Sale—Insufficiency of the Evidence.**

Where, upon trial of the selling intoxicating liquor in violation of the law, the only witness upon whom the State relied revealed such doubt and uncertainty that his testimony did not support the finding of the jury beyond a reasonable doubt, the judgment of conviction must be reversed and the cause remanded.

**2.—Rehearing—New Trial—Rule Stated.**

While it is rarely done and is never done except for the strongest reason, yet this court has on many occasions found it necessary to set aside a conviction where the verdict is manifestly wrong, and it must apply this rule in the instant case; although the zeal of the prosecuting officer is commended.

Appeal from the District Court of Milam. Tried below before the Honorable John Watson.

Appeal from a conviction of selling intoxicating liquor; penalty, one year in the penitentiary.

The opinion states the case.

*Robert M. Lyles,* for appellant.

*R. G. Storey,* Assistant Attorney General, and *A. J. Lewis,* County Attorney.—On question of insufficiency of testimony; Lee v. State, 204 S. W. Rep., 110; O'Hara v. State, 57 Tex. Crim. Rep., 577; Robert's v. State, 129 S. W. Rep. 611.

MORROW, Presiding Judge.—The conviction is for the unlawful sale of intoxicating liquor; punishment fixed at confinement in the penitentiary for a period of one year.

The purchaser named is Eugene Matula, who testified that he, in company with two other boys, made up a purse with which to buy some whisky; that he and the appellant then went in an automobile to a certain point in the road which he named; that appellant got out of the car and got a jar which the witness guessed contained whisky; that he paid the appellant for it, but did not know the amount that he paid. He gave him the money which had been made up by him and his friends; that it was dark at the time the transaction took place. He said that he was positive that the appellant was the man from whom he bought the whisky, but that he might be mistaken; that he just knew him by his face and that it was night at the time he saw him; that he thought for a while that it was another man by the name of Neiman, and that he first reported that it was Neiman from whom he bought the whisky; that he noticed nothing the matter with the hand of the man from whom he bought the whisky; that he noticed no bandage on it, but it seems that he had the use of both hands, though of this the witness could not be positive. He could also be mistaken as to whether it was the appellant from whom he bought the whisky. The witness said that he had testified before the grand jury that the appellant was the man from whom he bought the whisky, but that he was not sure about that and might be mistaken. He said that he got no whisky from anyone else that night, and that the party from whom he bought the whisky rode in a car. The witness also said that after he had testified that he had bought the whisky from Neiman, the appellant was brought before him and that he identified him as the man.

The companions named by the witness Matula testified to the fact that they made up a sum of money with which to buy whisky, and gave it to Matula; that he got the whisky. They fixed the date as the 4th of March, and the first Saturday in March, at about eight or nine o'clock at night.

Appellant proved by Doctor Newton, a physician, that Frank Neiman was in a sanitarium on the 4th of March and remained there for two weeks afterwards; that Rochetszky, the appellant, was at the hospital on the night of the 4th of March; that he had his hand bandaged and said that it had been treated by Doctor Sapp; that it was in a sling; that he remained in the office of the doctor at the sanitarium until closing time, which was about nine o'clock; that he arrived there, according to the best recollection of the doctor, at about seven o'clock.

Zalesky, the father-in-law of Neiman, was at the sanitarium and saw the appellant arrive there at about seven o'clock; that he remained there until nine o'clock. Appellant went with Zalesky to his

home. Mrs. Zalesky testified to the same effect, and Neiman also gave like testimony.

Doctor Sapp, a practicing physician of Cameron, testified that he treated the appellant on the 4th of March, and dressed his finger which had been injured, that is, his thumb, the end of which had been knocked off with a sledge-hammer; that he dressed it and appellant carried it in a sling upon that day. The dressing, according to the best recollection of the doctor, was put on in the evening. Appellant's wife also testified to the injury and to the dressing.

The State proved by August Zeresky the statement made by the witness Matula that he was not sure whether the appellant was the man who sold him the whisky.

Appellant testified that on the 3rd of March he had injured his hand and that he had it treated and put in a sling; that he was carrying it in that manner on the 4th of March; that Doctor Sapp treated it at Schiller's drug store; that his wife was with him; that he did not see Matula; that he went to the hospital at about seven-thirty and remained there until the hospital closed, which was about nine o'clock; that he left with Frank Neiman, Albert Zalesky and his wife and went to Zalesky's home; that he was not in Cameron at any time between eight and eleven o'clock that night; that he did not see Matula, nor did he have a conversation with him; that he had no transaction with him with reference to whisky and had never sold any whisky; that he never took a drink of whisky or beer in his life. Appellant's reputation for truth and veracity was proved to be good. No controverting testimony was introduced.

The State proved by grand jurors that the witness Matula identified the appellant as the man from whom he had bought the whisky.

There is but one bill of exceptions found, in which it is revealed that State's counsel asked the appellant if he was a Bohemian. The witness volunteered the statement that he was a German. The court, however, excluded the testimony.

It is to be noted that the appellant presented unusually strong testimony of alibi. The doctors at the sanitarium supported it, as did numerous other witnesses. It is undisputed that at the time the offense was committed, appellant was suffering from a wound and was carrying his arm in a sling. No such peculiarities were observed by the State witness in the person from whom he claims to have bought the whisky. He first claimed another person as the seller, but afterwards identified the appellant, and upon the trial his evidence upon that issue is self-contradictory. He manifests unmistakable hesitation touching the identity of the appellant as the offender. Appellant bore a good reputation and was not a drinker or handler of whisky or intoxicants of any kind. The fact that the State witness after claiming that the offense was committed by another, testified before the grand jury that he identified the appellant is not original

evidence, but bears alone upon the credibility of the witness. The evidence comes in such condition that we do not regard it as sufficient to overcome the presumption of innocence which the law throws around the accused. The only witness upon whom the State relied reveals such doubt and uncertainty that, in our judgment, his testimony does not support the finding by the jury, beyond a reasonable doubt, that the appellant was the offender. The statute, Art. 939, Code of Crim. Proc., declares that this court may reverse a judgment upon the law as well as upon the facts in a case. While it is rarely done, and is never done except for the strongest reasons, yet this court has on many occasions found it necessary to set aside the judgment where the verdict was manifestly wrong, and it is made clear that injustice was done to the accused. See Walker v. State, 14 Texas Crim. App. 609, and other cases listed in Vernon's Texas Crim. Stat., Vol. 2, p. 689, note 14. The present is one calling for the application of this principle.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

May 23, 1923.

HAWKINS, JUDGE.—The county attorney of Milam County, Hon. A. J. Lewis, acting for the state, has filed a strong motion for rehearing in which he insists that the judgment should not have been reversed. The general rule that the verdict of the jury would not be disturbed upon questions of fact by this court, now urged as a reason for affirmance, was recognized in our former opinion by the statement therein, that "While it is rarely done, (that is, a case seldom reversed on the facts), and is never done except for the strongest reasons, yet this court has on many occasions found it necessary to set aside the judgment where the verdict was manifestly wrong, and it is made clear that injustice was done to the accused."

We have announced no new rule in this case, but applied an old one. It is manifestly impracticable to set out within reasonable compass all the facts leading us to the conclusion heretofore reached. It was not the evidence tending to impeach the state's only witness which controlled, but his own uncertain and self contradictory statements. None of the cases cited in support of the motion reveal a similar state of facts.

We commend the zeal of the officer representing the state, and wish that more might follow his example in showing interest in cases appealed to this court under their administration. Much aid could be rendered us by such a course. We regret that we are unable to bring ourselves in accord with his views in the instant case.

The motion for rehearing is overruled.

*Overruled.*