Opinion delivered June 9, 1886.

---

[No. 4000.]

QUINCE WILKERSON v. THE STATE.

THEFT—FACT CASE—NEW TRIAL.—See the statement of the case for evidence *held* insufficient to support a conviction for cattle theft. And note the opinion and the statement of the case for a showing whereunder the trial court should have awarded a new trial, because the verdict was against the evidence, and in consideration of the showing made in support of the motion for new trial.

APPEAL from the District Court of Bell. Tried below before the Hon. W. A. Blackburn.

The conviction in this case was for the theft of a cow, the property of T. P. Hill, in Bell county, Texas, on the twenty-seventh day of December, 1880. A term of two years in the penitentiary was the penalty awarded.

J. Y. Burke was the first witness for the State. He testified that, in the winter of 1880–1881, he was engaged in the butcher business in the town of Salado, Bell county, Texas. On or about December 29, 1880, the defendant came to witness's shop and asked witness what he was paying for cows. Witness told him that cows sold for about twelve dollars, or three cents per pound, dressed. He offered witness a cow for sixteen dollars on the hoof, or for three cents per pound, the witness to kill it. Witness declined, because of the cold weather. Defendant then proposed to kill the animal if witness would send a man to help him. Witness did so, and about two hours afterwards defendant delivered to the witness the carcass and the hide of a red cow. He brought the hide to the shop, rolled up and flesh side out. Witness did not unroll it, but sent it at once, with the bill of sale executed by defendant,. to Theodore Griffith, to whom witness sold all of his hides. The bill of sale conveyed a red cow branded 70. Four or five days after that transaction, T. P. Hill came to witness's shop in search of the cow. Witness told Hill that he had sent the hide and bill of sale to Griffith, and that he had made no examination of the hide. Witness paid the defendant fifteen or sixteen dollars for the beef and hide. Witness did not know the present whereabouts of the bill of sale. The justice of the peace had it when the witness last saw it.

James Levi testified, for the State, that some time in December, 1880, J. Y. Burke employed him to help the defendant butcher a cow. Defendant took the witness to a tree, about one and a half miles from Salado, to which a large red cow, branded on the left hip with a plain diamond, was tied. Defendant knocked the cow in the head with an ax and killed her. She was found to contain a calf in embryo, which would probably have been dropped within a month. The head of the cow was mutilated. The head, feet, young calf, and refuse of the cow were left at the place of slaughter. The meat and hide were then taken to Burke, who sent the hide to Griffith by the witness. If the cow had any other than the diamond brand the witness did not see it. The witness afterwards saw the same hide at the defendant's examining trial.

Theodore Griffith testified, for the State, that in the latter part of December, 1880, he purchased a fresh hide from J. Y. Burke. The bill of sale was sent to witness with the hide. That bill of sale described the brand as 70. Witness did not examine the hide. He had that bill of sale after the examining trial of the

defendant, but had since lost it. He had made diligent search for the same, but had been unable to find it. A few days after witness bought the hide from Burke, T. P. Hill came to witness's office, tracing a cow he had lost. Witness showed Hill his hides, but was then unable to say which of the several hides he then had was the one sent to him by Burke with defendant's bill of sale. Hill took off one of the hides, and witness next saw it on the defendant's examining trial. Witness could not recall the brand on the hide taken by Hill, but knew that it was not 70.

S. P. Hill testified, for the State, that in 1880 he lived in Bell county, Texas, about five miles distant from the town of Salado. Late in December, 1881, the witness lost a large red cow, heavy with calf. She ran about witness's place, and had been fed throughout the winter. That cow was branded JA on the right hip, and with a diamond on the left hip. Witness went to Salado on the second day after he missed his cow, and was referred by J. Y. Burke to Theodore Griffith, in whose possession witness found the hide of the cow. The hide was then rolled up and was hard frozen, but witness unrolled it far enough to distinctly see the diamond brand. He then took charge of the hide, and had it on the defendant's examining trial. When he recovered the hide, the witness searched for and found the place where the cow was slaughtered. The remains of a nearly matured calf, the head, entrails, etc., were found on the ground where the cow was killed. Witness identified the head as the head of his cow. The witness did not examine the hide far enough to find the JA brand. Witness got that cow from John Archer. She was taken from witness's possession without his knowledge or consent.

John Archer testified, for the State, that he sold to the prosecuting witness, Hill, a certain large red cow, branded as stated by Hill. Witness was present at the examining trial of the defendant, and saw a hide but did not examine it. The cow sold by witness to Mr. Hill was branded JA on one hip and a diamond on the other hip.

Will Cannon testified, for the State, that he was present at the examining trial of the defendant, and saw the hide claimed by Hill. It was a red hide, branded JA on one hip. Witness did not know what brand, if any, was on the other hip. The State closed.

John Kimbrough was the first witness for the defense. He testified that in 1880 he lived near Holland, in Bell county, Texas,

and knew a young man named Garrett. Late in December, 1880, witness went with defendant to Garrett's house, and witnessed a trade made by defendant with Garrett for a large red cow. Witness attested the bill of sale, as did another young man whom witness did not personally know. Witness then helped defendant drive the said cow to the suburbs of Salado, where she was tied to a tree. Defendant sold that cow to Burke. Witness, on the next morning, saw a cow's head at the tree to which the cow was tied on the preceding evening, and knew it to be the head of the cow sold by Garrett to the defendant.

The bill of sale executed by William Garrett, conveying to defendant a large red cow, nine years old, branded 70, marked a swallowfork in the right and an underbit in the left ear, witnessed by John Kimbrough and William Moden, was next read in evidence by the defense.

Cross-examined, witness testified that defendant's trade with Garrett for the cow mas made at Garrett's house. Garrett did not go to the cow when the trade was made, but pointed the animal out among others some two hundred yards off. Witness saw no money pass between the parties, but saw defendant give Garrett a watch.

The affidavit of William H. Garrett, filed in support of the the defendant's supplemental motion for new trial, sets out that if a new trial was granted defendant, the affiant would testify on the trial that he sold the cow in question to the defendant, and received therefor a valuable and sufficient consideration, and that he sold the said cow to the defendant in good faith, believing himself to be the lawful owner of the same.

The motion for new trial raised the questions discussed in the opinion.

*Harris & Saunders* and *Rosborough Brothers,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. Considered in the light of the testimony adduced at the trial, the verdict and judgment in this case are against the weight of evidence; and when, in addition to this fact, the affidavit of the absent witness, Garrett, in support of the motion for a new trial, is also considered, we are clearly of opinion that the court erred in overruling the said motion.

As shown by the evidence, the defendant's possession of the alleged stolen animal was by virtue of a bona fide purchase and bill of sale from one Garrett, and if the animal really belonged to Hill, the alleged owner, then Garrett simply made a mistake when he sold her to defendant, believing her to be his own. Garrett, who reached the court after the trial and conviction, swears, in his affidavit supporting the motion for a new trial, to a state of facts which throws the entire blame, if any, upon himself, and wholly and entirely exonerates defendant from any blame whatsoever, much less any criminality in the transaction.

With the record as presented to us, we do not hesitate to say that the verdict and judgment are against the evidence, and the court should have set them aside, and granted a new trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*