Opinion delivered June 5, 1886.

[No. 3920.]

### Green McLaren v. The State.

Theft—Fact Case—New Trial.—See the opinion and the statement of the case for evidence held not merely insufficient to support a conviction for theft, but cogent to establish the innocence of the accused; wherefore the trial court erred in refusing him a new trial.

Appeal from the County Court of Robertson. Tried below before the Hon. J. E. Crawford, County Judge.

The conviction in this case was for the theft of a hack cushion and a pair of hack lines, of the aggregate value of seven dollars, the property of J. E. Bond, in Robertson county, Texas, on the thirteenth day of October, 1884. The penalty assessed against the appellant was a fine of twenty-five dollars and confinement in the county jail for a period of thirty days.

J. E. Bond was the first witness for the State. He testified, in substance, that one night, in October or November, 1884, he went to the town of Bremond to attend a political meeting. He tied his horses to a public rack, which stood about fifty yards distant from the hall in which the meeting was held. When the witness went to his hack, after the meeting adjourned, he discovered that a cushion and a pair of lines had been taken by some one. Inquiry about town failed to discover them, but disclosed the fact that other articles had been stolen from other parties. Mr. Anderson had lost a saddle blanket, Mr. Shelby Hammond a bridle and saddle blanket, and Mr. Gibson a "slicker" over coat. Witness told Hammond that he would pay two dollars and a half for the recovery of the cushion and lines. Six or eight months afterwards, witness received information from Hammond upon which he sued out a search warrant, which he placed in the hands of constable Anderson. Anderson recovered the

articles lost by witness, and witness paid Hammond the two dollars and a half promised.  A large crowd, mostly negroes, were in attendance upon the political meeting.

Constable John E. Anderson testified, for the State, that he attended the political meeting in the town of Bremond, on the night referred to by witness Bond.  Some body stole the witness's saddle blanket on that night.  It was taken from the back of his horse.  Witness heard Bond inquiring for his cushion and lines.  He also heard Shelby Hammond say that he had lost his bridle and saddle blanket, and Mike Shields said that he had lost his over coat.  Late in the spring of 1885, Mr. Bond placed a search warrant in witness's hands, to search John McLaren's house for the articles he had lost.  Doctor B. F. Hammond went with witness to old John McLaren's.  Witness found old John at home, and told him what he had come for, and asked him if he knew any thing about the cushion and lines.  Old John said that there was a cushion and some lines about the place, which his boys found on the road some months before.  Old John, his wife Vina, Doctor Hammond, and witness then went out to the shed, and while they were examining the cushion and lines, defendant came up, and was present when old John and Vina told witness how, when, and where defendant and the boys found the things.  Vina said that on the morning after the political meeting in Bremond, she found the several articles lying in the yard, and asked defendant how they came there; that defendant said he and John Love found them on the road side, near the rail road tank, as they came back from Bremond on the night before, and that he brought them home; that among the things was a "slicker" and an over coat, which last article was found to belong to Mr. Shields, and was sent to him.

Cross-examined, witness testified that the cushion and lines were not concealed, but were in plain view in a buggy in an open shed, on old John McLaren's place.  Neither old John, Vina, nor the defendant manifested any purpose to conceal or withhold any information about the things.  Witness had no search warrant for the slicker, and consequently said nothing about it, but old John voluntarily spoke of it, got it, and exhibited it to witness, asked him whose it was, and wanted witness to take it, find the owner, and return it.  Witness declined to take the slicker, but promised if he found the owner to notify him that old John had it.  Witness afterwards learned that the slicker belonged to Gibson, and got and delivered it to Gibson.  Neither

defendant, old John, nor Vina claimed the articles, but said that they had been found, as stated. Witness told defendant to consider himself under arrest, and to appear before justice Joiner on the next day; which he did. Witness did not place defendant under bond. State closed.

Vina McLaren, defendant's mother, was his first witness. She testified substantially the same as Anderson as to what occurred at her house on the day that Anderson arrived and executed the search warrant. In addition, she testified that defendant and John Love got back to her house between eleven and twelve o'clock on the night of the political meeting in Bremond. Early on the next morning the witness saw a buggy cushion, lines, an overcoat, and a slicker lying in the yard. She called the defendant and asked how they came to be there. Defendant said that he and John Love found them on the road on their way home, and that he brought them home and threw them down in the yard, and being sick had not thought of them since. Witness then hung the slicker and over coat up on the gallery, and put the cushion and lines on the gallery next to the wall. Defendant went to his work after breakfast, and when he returned that evening, witness told him he must inquire for the owners, and return the articles. He replied that he did not have time to hunt the owners, but would get John Love to do so in his rounds hunting day work. Witness heard defendant tell John Love to inquire for the owners or owner of the things. A day or two later John Love said that he described the over coat to Mr. Bonneville, and Bonneville said that Shields lost the over coat on the night of the political meeting. John took the over coat to Mr. Bonneville. The other articles were kept at the house until Mr. Anderson came and got the cushion and lines. Green, the defendant, never claimed the things as his own. Witness sent the cushion and lines to Calvert several times. No effort was ever made to conceal the articles.

John Love testified, for the defense, that he was with defendant when the various articles was found, on the night of the political meeting in Bremond. They were found on the side of the road near the railroad track. Defendant took the things home, and on the next day told witness to inquire of persons he met who owned the articles found. A day or two later witness told Mr. Bonneville about the over coat, and subsequently took it over to him.

Cross-examined, witness testified that he did not tell Bonne-

ville of the other articles found when he told him about the over coat, because he did not think to do so. Witness had been tried for the theft of these articles and acquitted. Witness remembered a conversation he had with county attorney Lewis about turning State's evidence in this case. Charley Hammond was present and did most of the talking. Witness told Mr. Lewis that if he would dismiss the prosecution as to him, witness, he would tell the truth as to how the defendant got the things. The truth was that defendant found them as stated. Witness did not remember that he told Lewis that he would testify that defendant got the articles in Bremond.

Charley Hammond testified, for the defense, that he was present and heard and participated in two or three conferences between John Love and county attorney Lewis about John turning State's evidence. John always said that he would tell the truth about the matter. He never said that defendant stole the articles in Bremond. Witness did not remember that he himself ever told Lewis that John Love would swear that defendant got the things in Bremond. The defense closed.

A. L. Lewis testified, for the State, in rebuttal, that in December, 1885, John Love and Charley Hammond came to his office at night, and Love proposed to turn State's evidence if witness would *nolle prosequi* the case against him. This the witness declined to do. When witness announced ready for trial in one of the cases against defendant, John Love and Charley Hammond beckoned him out of the court house. John Love then said he would turn State's evidence and testify against defendant if witness would dismiss the case against him. Witness agreed, and told him to take the stand. He refused to testify unless the witness first dismissed his case. Witness declined, and John Love did not testify for the State in that case.

The motion for new trial raised the questions discussed in the opinion.

*W. O. Campbell,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

Willson, Judge. This conviction is not only not supported by, but is against the evidence and the law. Defendant explained his possession of the property by saying that he had found it on the road and had taken it up and carried it to his

home. He proved the truth of this explanation by a witness who testified that he was in company with the defendant when the property was so found and taken. There is not a particle of evidence tending to show the falsity of defendant's explanation, but, on the contrary, all the evidence in the case tends strongly to establish its truth, and corroborates the testimony of the witness who stated positively that the defendant did find the property and took it innocently. Defendant at no time claimed the property as his own, or attempted to conceal it, but, on the contrary, made efforts to discover the owner of it, and did, in fact, discover the owner of a portion of it, an over coat, and restored the same to the owner.

The court erred in not granting the defendant a new trial, and for this error the judgment is reversed and the cause remanded.

*Reversed and remanded.*