[No. 2448.]

## WILLIAM PHIPPS *v.* THE STATE.

THEFT—FACT CASE.—See the statement of the case for evidence in a theft case *held*, not only insufficient to support the conviction, but contrary thereto.

APPEAL from the District Court of Bosque. Tried below before the Hon. J. M. Hall.

The conviction in this case was for the theft of a horse, the property of Billy Richards, in Bosque county, Texas, on the first day of October, 1885. A term of five years in the penitentiary was the penalty assessed by the jury.

William Richards was the first witness for the State. He testified, in substance, that he lived in Bosque county, Texas, between the towns of Clifton and Valley Mills. The horse described in the indictment, and others, all of which belonged to the witness, disappeared from their accustomed range, between the Bosque river and Childress creek, in September, 1885. A month later the witness heard of them at Wortham's Bend, ten or twelve miles west from where he lived. He sent Jim McFadden to the Bend, and recovered all of his animals except the horse described in the indictment. The witness consented for no one to take his horse. The horse involved in this proceeding, a black mare, a gray mare and a two year old horse mule, all save the mule branded plainly with the witness's brand, the figure 6, disappeared at the same time. The mule was unbranded. The range from which the horses were taken was in Bosque county, Texas..

Jim McFadden testified, for the State, in substance, that he lived about a mile from the witness William Richards, commonly known as "Billy" Richards, and had known the Richards horse for many years. In October, 1885, witness went to the house of the defendant at Wortham's Bend, in Bosque county, saw the defendant, and described to him the Richards horses, for which he was then looking. Defendant replied that he had driven up some animals believing them to be the property of his brother Newt, but that, from witness's description of the animals, they must be the Richards stock. Defendant went off, brought the animals up, and turned them over to the witness. Witness, before this, met a man in Valley Mills who told him where the horses could be found, and witness told Richards, and Richards sent him to the Bend after the horses. After defendant turned the horses over to him, witness advised defendant to go with him to Valley Mills, and see Mr. Richards, and defendant did so. An affidavit was subsequently filed against the defendant, and witness, who was a deputy sheriff, arrested him. Witness recovered the two mares and the mule for Richards, but did not recover the bay gelding—the animal described in the indictment. Witness's information was that that animal's neck was broken in an effort to tame him to work.

Mr. Martin testified, for the State, that, in 1885, he lived in McLennan county, Texas, about six miles distant from Wortham's Bend, which was in Bosque county. Witness knew the defendant and his brother Newt. Before the latter left the country, he told witness he would pay him five dollars per head for all the horses in the figure 6 brand that witness would find and deliver to him. Some time afterwards, the witness and Mr. Tom Wortham found the horses in the 6 brand, referred to by previous witnesses, on the Isenhow branch, in Bosque county. They went to the defendant and asked him if his brother Newt owned such horses. He replied in the affirmative. Witness and Wortham then told him that if he would pay them they would conduct him to the said horses. Defendant paid them, and went with them, and the three, witness, Wortham and defendant, penned the horses at Wortham's, and defendant afterwards turned them into Sam Cogdale's pasture. Witness had never seen any other horses in the figure 6 brand, and knew nothing about Newt Phipps owning any such horses. When the horses described were turned over to the defendant, he said that the figure 6 brand of his brother Newt was recorded in both McLennan and Bosque counties, and agreed to go to Meridian to see if any body else gave the 6 brand. Defendant went to Meridian on the next day, and on his return said that he found the brand all right, and that it was given by no other person in Bosque county but his brother Newt. All this occurred in Bosque county, between the first and tenth days of September, 1885. Tom Wortham's testimony was substantially the same as Martin's.

George Davis testified, for the State, that he was a brother in law of Newt Phipps. Newt Phipps left Wortham's Bend nearly a year previous to this trial, since when the witness had not seen him. Some six or seven years prior to this trial, the witness saw several horses branded 6 on the left hip, in Newt's possession, but had seen no such horses in his possession since.

F. B. Williams testified, for the State, that he lived in McLennan county, Texas, and for five or six years had owned the "McCowan estate" stock of horses. McCowan's brand was the letter J on the left hip. Newt Phipps bought that brand of horses before witness did, but failing to pay for them they were taken back by the vendor, and sold to witness. The original branding iron got lost and the blacksmith, in making a new iron curled the letter the wrong way, and made a 6 instead of a J.

---

---

Six or eight colts were branded with that reversed J or 6 brand, high up on the hip. While Newt Phipps owned the McCowan stock he branded five or six colts 6, high up on the hip. Newt Phipps told witness, after witness bought the horses, that he had no claim on them.

T. B. Williams testified, for the State, that he was familiar with the McCowan stock of horses. McCowan's brand was the letter J on the left hip. He knew of no horses branded 6 running in that neighborhood. Newt Phipps once bought the McCowan horses, but got into trouble about them, and returned them to McCowan, who died soon afterwards. The State closed.

George Jacobs testified, for the defense, that he made a crop on the place of the defendant's mother in 1885. Newt Phipps moved away from Bosque county in the summer of 1885. A week or two before he left, Newt told witness and defendant that if they would find and take up for him all horses branded 6 on the left shoulder, he would pay them five dollars a head, or give them half of the horses. Witness did not gather his crop in time to assist defendant in hunting such horses, a fact over which he now rejoiced. Newt Phipps left the country in a wagon drawn by a mule and a jennet, with a jackass tied behind.

The motion for new trial raised the question discussed in the opinion.

No brief for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. The judgment of conviction for theft rendered in this case in the court below is wholly unsupported by, and is contrary to, the evidence, as sent up to us in the record.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*