IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-469-05





 

DELAIR WATSON, Appellant



v.



THE STATE OF TEXAS


 




ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE TENTH COURT OF APPEALS


MCLENNAN COUNTY





 Price, J., delivered the opinion of the Court in which Meyers, Womack,
Johnson and Holcomb, JJ., joined. Hervey, J., filed a dissenting opinion, in which
Keller, P.J., and Keasler and Cochran, JJ., joined. Cochran, J., filed a dissenting
opinion in which Keller, P.J., and Keasler and Hervey, JJ., joined.


O P I N I O N



 We granted the State's petition for discretionary review in this cause to address the
question whether the court of appeals can reverse a conviction on the basis of factual
insufficiency of the evidence even when it believes that the evidence preponderates in favor
of guilt, consistent with our opinion in Zuniga v. State. (1) Moreover, we granted discretionary
review on our own motion to address the further question whether we should undertake
further clarification of the Clewis (2) standard for factual-sufficiency review as articulated in
Zuniga. We now recognize that the Zuniga re-articulation of the Clewis standard represents
an inadvertent distortion of factual-sufficiency review as historically conducted by this Court
and its predecessors, and to that extent we overrule it.

I. FACTS AND PROCEDURAL POSTURE


 The appellant was prosecuted for the burglary of a habitation during which he
allegedly attempted to commit sexual assault. The jury convicted him of this offense and
assessed his punishment at thirteen years' confinement in the penitentiary. On appeal he
challenged both the legal and factual sufficiency of the evidence. The Tenth Court of
Appeals found the evidence legally sufficient. (3) However, finding the evidence factually
insufficient, the court of appeals reversed the conviction and remanded the cause for a new
trial. (4) On the authority of our opinion in Zuniga, the court of appeals held that, even though
the evidence preponderated in favor of finding an intent to commit sexual assault, it was
nevertheless factually insufficient to support a finding of such an intent to a level of
confidence beyond a reasonable doubt. (5) We granted the State's petition for discretionary
review to determine whether Zuniga does indeed authorize reversal when the legally
sufficient evidence supporting the verdict "equals or outweighs the contrary evidence[.]" On
our own motion, we expanded review to include the question whether we should re-examine
Zuniga. In order to gain a proper perspective on these issues, we think it useful to review the
origins and history of factual-sufficiency review in Texas.

II. FACTUAL-SUFFICIENCY REVIEW BEFORE CLEWIS


 The authority of criminal appellate courts in Texas to reverse criminal convictions on
the basis of factually insufficient evidence did not begin with our opinion in Clewis. Criminal
appellate courts in Texas have always had, within their constitutional "appellate jurisdiction,"
the authority to review criminal convictions for what we now call "factual sufficiency" of the
evidence. This includes the authority to reverse cases we would now regard as supported by
"legally sufficient" evidence when the verdict nevertheless seems to be against the great
weight and preponderance of the evidence. That authority has been codified in all former
incarnations of what is now Article 44.25 of the Code of Criminal Procedure, authorizing
criminal appellate courts to "reverse" (nee "revise") criminal judgments "as well upon the
law as upon the facts[.]" (6) Clewis did not invent factual sufficiency. Instead, the Court in
Clewis, with an assist from our earlier opinions in Meraz v. State, (7) and Bigby v. State, (8)
rediscovered factual sufficiency, and resurrected it from a brief, court-imposed dormancy.

A. Bailey, Smith and Bishop


 The authority of criminal appellate courts in Texas to review factual sufficiency
derives from the Texas Constitution. Both Bigby, and later Clewis, cite a trio of very old
Texas Supreme Court cases for the proposition that criminal appellate courts in Texas have
the authority, within their constitutionally endowed "appellate jurisdiction," to conduct a
factual review. None of these cases, Bailey v. Haddy, (9) Republic of Texas v. Smith, (10) and
Bishop v. State, (11) purports to hold that such a factual review embraces what we now call a
"factual sufficiency" analysis. But each confirms that, first under the 1836 Constitution of
the Republic, and then under succeeding state constitutions, the Supreme Court's appellate
jurisdiction over criminal cases included the power to revise the case "upon the law as upon
the facts." (12) This is precisely how a majority of this Court would come to construe these
cases in Bigby (13) 

 None of these earliest cases expressly declared that factual-sufficiency review, per se,
was authorized in criminal cases. But later cases construed the criminal appellate "fact"
jurisdiction in Texas, first recognized in these earliest cases, to include what we would now
call factual-sufficiency review. Moreover, Old Code Article 744, and all later iterations of
that provision up until the 1981 amendment to present-day Article 44.25, (14) expressly
contemplated that criminal appellate courts had the power to "reverse[ ] for the reason that
the verdict is contrary to the weight of the evidence[.]"

B. Tollett and Loza


 Among the very earliest cases to address sufficiency of the evidence were Tollett v.
State (15) and Loza v. State. (16) In each of these cases, the respective courts conducted an analysis
that, to the contemporary ear, sounds much like what we would now call a "legal sufficiency"
analysis. Neither Tollett nor Loza explicitly holds that the factual jurisdiction of criminal
appellate courts in Texas includes the power to conduct a factual-sufficiency review, per se. 
But they do not rule it out either, and, like the earliest Texas Supreme Court cases, they do
confirm the general factual jurisdiction of criminal appellate courts. Nevertheless, other
cases from this period from the Texas Court of Appeals, the direct predecessor of this Court,
demonstrate that the Court well "understood the nature and extent of its power to review jury
verdicts for evidentiary sufficiency, albeit not then labelled 'legal sufficiency' and 'factual
sufficiency.'" (17) Some of those cases utilize language that sounds distinctly as though it
belongs in the latter category. (18)

C. Walker


 In Walker v. State, the Texas Court of Appeals (the direct predecessor of this Court)
undertook a detailed analysis of the prior case law touching on the question of evidentiary
sufficiency. (19) From that analysis the Court distilled the following "rules of practice":

 From a careful consideration of the cases in which this subject has been
discussed, we deduce the following rules of practice governing this court, viz:


 First. Where the evidence is conflicting, and there is sufficient, if believed, to
prove the case of the State, the jury being the exclusive judges of the
credibility of the testimony, their verdict will not be set aside unless it clearly
appears to be wrong.


 Second. Where there is no testimony to support it, the verdict will be set aside.


 Third. Where the evidence is insufficient to rebut the presumption of
innocence, the verdict will be set aside.


 Fourth. Where the verdict is contrary to the weight of the evidence, it will be
set aside. (20)


The discussion that the Texas Court of Appeals undertook in Walker just before it set out
these "rules of practice" seems manifestly to contemplate multiple and variable standards
of sufficiency review, not variations on a single standard. The Walker rules even include a
standard whereby the Court was authorized to reverse a conviction "though there was
evidence sufficient to support it." (21) In its entirety, omitting string citations, the Walker
discussion reads as follows:

 With reference to the authority of this court to set aside a verdict when that
verdict is, in our judgment, against the weight of the evidence, or not
supported by it, we think the statute confers it. Article 870 of the [1879] Code
of Criminal Procedure provides: "The Court of Appeals may revise the
judgment in a criminal action, as well upon the law as upon the facts; but when
a cause is reversed for the reason that the verdict is contrary to the weight of
evidence, the same shall, in all cases, be remanded for a new trial."


 With reference to trials by jury it is provided: "The jury are the exclusive
judges of the facts in every criminal cause." ([1879] Code Crim. Proc., Art.
676) And again it is provided: "The jury in all cases are the exclusive judges
of the facts proved, and of the weight to be given to the testimony, except,"
etc. ([1879] Code Crim. Proc., Art. 728.)


 While Article 870, above quoted, expressly confers the authority to revise the
facts, and to reverse the judgment for the reason that the verdict is contrary to
the weight of evidence, it has been the general practice of this court to refuse
to set aside a verdict where the evidence was conflicting, but where there was
sufficient, if believed, to support the finding.


 But even in such case, where it was manifest that the verdict was wrong, and
it was clear that injustice had been done the defendant, it has been set aside,
though there was evidence sufficient to support it.


 And it has never been doubted, but has always been considered by this court,
not only that it had the authority, but that it was its duty to set aside a verdict
where that verdict was contrary to the evidence, or unsupported by it, though
it is with reluctance that the court will disturb a verdict where there is any
evidence to sustain it. (22)


It could not be more clear from this discussion that the Texas Court of Appeals deemed itself
authorized to reverse convictions under a number of distinct scenarios, and that the "rules of
practice" that immediately follow are not meant to be understood as variations on a single
insufficiency theme, but as, indeed, separate "rules."

 It is also imperative to note the Texas Court of Appeals's reference to the predecessors
of present-day Articles 36.13 and 38.04 of the Code of Criminal Procedure. (23) These are the
provisions that reserve the fact-finding function to the jury. That the Texas Court of Appeals
would juxtapose a reference to these statutory provisions with its discussion of its own
authority to reverse a conviction that is against the weight of the evidence, or manifestly
wrong or unjust, notwithstanding "there was evidence sufficient to support it," demonstrates
that the statutory provisions have peacefully co-existed with that appellate authority for at
least a hundred and twenty-three years. From their placement in Chapters 36 and 38 of the
Code, which govern trial practice and procedure, it is apparent that Articles 36.13 and 38.04
were meant merely to allocate the fact-finding function at the trial level and do not purport
to affect appellate review. (24) It is true that they have often been cited for the proposition that
jury verdicts should not ordinarily be disturbed when supported by competent evidence. But
criminal appellate courts in Texas have never interpreted them to wholly prohibit the limited
factual review that is otherwise inherent in their appellate jurisdiction, and authorized by
Article 44.25 and its predecessors.

 After Walker, in cases of conflicting testimony or evidence, the Texas Court of
Appeals continued to measure sufficiency of the evidence by inquiring, inter alia, whether
the verdict was against the great weight of the evidence. (25) In several of those cases the Court
reversed the convictions, expressly finding the evidence to be, indeed, against the weight of
the evidence. (26)

D. Factual-Sufficiency in the Texas Court of Criminal Appeals


 When the Texas Court of Appeals became the Texas Court of Criminal Appeals in
1891, we continued to exercise our constitutionally endowed factual review authority to
review cases for factual sufficiency. During its very first term, this Court reversed a
conviction for theft of a horse on the basis of factual insufficiency of the evidence, in a cased
styled Foresythe v. State. (27) There, a certain witness, one Ellard, testified that on the day of
the theft he had observed Foresythe in the vicinity of the pasture from which the horse was
stolen. The horse was later found in Foresythe's possession. Other witnesses placed
Foresythe in a different county on the day of the theft, and it was shown that he had bought
the horse from a man named Wats, with a bill of sale and corroborating testimony introduced
to that effect. This Court reversed, observing:

 We believe that the verdict of the jury is against the great weight of the
testimony; that every apparent inculpatory fact has been met by the testimony
for the defendant and made to consist with his innocence, except Ellard's
testimony that he saw defendant in the pasture. This we believe to be a
mistake, and a very reasonable and common one. (28)


Nothing about this reversal is consistent with what we today regard as a "legal sufficiency"
analysis. It was a reversal on factual insufficiency, pure and simple.

 Again, in 1912, we reversed a conviction for the crime of seduction on account of 
insufficiency, in Murphy v. State. (29) Although the complainant, a teenage girl, testified that
Murphy promised to marry her before she submitted to have intercourse with him, the
corroborating testimony placed any promise of marriage at a time after the intercourse
occurred. For his part, Murphy denied the sexual intercourse even occurred, and the
circumstances tended to bear out his denial. We observed that:

 While the jury is the judge of the credibility of the witnesses and the
weight to be given the testimony, yet we are authorized to look to see if there
is any testimony, or that it is so slight as not to authorize a finding therein
against the great preponderance of the testimony. (30)


Although it is arguable that the case could have been reversed on legal insufficiency, i.e., the
failure of proof of corroboration statutorily required to convict, the Court nevertheless clearly
resorted to the language of factual sufficiency.

 In both Rochetszky v. State, (31) and Green v. State, (32) the prosecution presented
eyewitness testimony of dubious reliability. In the former, a prosecution for sale of
intoxicating liquor, the defendant "presented unusually strong testimony of alibi." (33) In the
latter, a rape case, the complainant had made no outcry until it was discovered that she was
pregnant, and her account struck the Court as, "to say the least, slightly out of line." (34) While
reversing both cases, we did not resort specifically to language with respect to the weight of
the evidence. But both cases invoked then-Article 939 of the Code of Criminal Procedure
(now Article 44.25) as authority for reversing a conviction "as well upon the law as upon the
facts." Indeed, in Green we expressly acknowledged that, under the statute, "this court may
reverse a judgment upon the facts; we hesitate to interfere with the verdict of the jury in any
case, but it is our duty to do so when there is not sufficient testimony to support it." (35) By the
semicolon in this quoted passage, it is obvious that the type of sufficiency review we were
referring to was a factual-sufficiency review, not a legal sufficiency review. And in
Rochetszky, we expressly held that a reversal was necessary to avoid an injustice, "where the
verdict was manifestly wrong." (36) Of course, this is classic language of factual-sufficiency
review, of the type that Walker would classify as the third of its "rules of practice." Both
opinions survived stout assertions on rehearing that the Court had erred to invade the jury's
province by deciding the cases "upon questions of fact[.]" (37)

 In Villareal v. State, (38) the defendant was convicted of murder and sentenced to death. 
The evidence was circumstantial as to exactly how the homicide occurred, the witnesses
having only heard the offense, but not seen it. The defendant testified that he killed the
deceased in self defense, while the deceased was on top of him and choking him. A
physician testified for the State that the fatal wound had come from behind the deceased, thus
contradicting the defendant's account, and supporting the State's case of murder with malice,
a capital offense. Nevertheless, this Court reversed the conviction. Invoking Article 848 of
the 1925 Code of Criminal Procedure, (39) now Article 44.25, we observed:

 [W]e are not to be understood as saying that the evidence may not be strong
enough to support a conviction for murder, but that the mind of this court upon
an examination of this record is left in such a condition that we are desirous
that the evidence should be passed upon again by another jury.


 * * *


 In reaching our conclusion in this case we have not overlooked the
general rule, frequently announced, that the credibility of witnesses and the
weight to be given their testimony exclusively rests with the jury and the lower
court. Further, that this court will not pass on the sufficiency of the evidence
unless there is an entire failure of proof; and that the amount of punishment is
the jury's special province. However, we do find that this court has upon
occasion applied such rules with a degree of laxity where, under the facts of
such cases, it appeared that the conviction was unjust or that the punishment
was harsh or unreasonable. (40)


It is hard to imagine a more starkly candid exercise of criminal appellate factual jurisdiction
than this. While it may be the case, as has been suggested, that factual sufficiency went into
hiding in the late Forties and early Fifties, (41) that does not mean that it never existed.

E. The Ascendancy of Legal Sufficiency


 In 1979, the United States Supreme Court recognized for the first time, in Jackson v.
Virginia, (42) a minimum federal due process standard for sufficiency of the evidence below
which a state court conviction cannot be sustained. (43) The Supreme Court also held that this
legal standard for evidentiary sufficiency could be vindicated by the federal courts in federal
habeas corpus proceedings. (44) But while Jackson v. Virginia does impose upon the states a
constitutionally minimum legal sufficiency standard, (45) it does not (and could not, consistent
with principles of federalism) prevent the states from applying sufficiency standards that are
more solicitous of defendants' rights. (46) Thus, nothing about Jackson impacts the legitimacy
or fate of factual-sufficiency review in criminal cases in Texas.

 Nonetheless, within six months after Jackson was decided, this Court announced in
White v. State, (47) apparently for the first time, that we lack factual-review authority, and
therefore "we do not have jurisdiction to pass upon the great weight and preponderance of
the evidence[.]" (48) The Court predicated this holding on the so-called "factual conclusivity
clause" in Article V, Section 6 of the Texas Constitution. (49) That provision makes the
resolution of factual issues by the intermediate courts of appeals conclusive upon
discretionary review courts in Texas, such as this Court and the Texas Supreme Court. (50) 
What we failed to take into account in White was the fact that, in 1979, this Court was still
exclusively a direct appellate court, not a discretionary review court. (51) For that reason we
were mistaken to think that our own factual appellate jurisdiction could be circumscribed by
the factual conclusivity clause.

 Three years later we mistakenly relied upon White to support the observation, in
Combs v. State, (52) that we lack the authority to make "determinations of sufficiency of the
evidence . . . passing upon the weight and preponderance of the evidence." (53) Following that
observation, we immediately dropped a footnote in which we globally (and equally
mistakenly) declared: "We perceive no other standard may be utilized by the Court of
Appeals in reviewing criminal convictions other than sufficiency of the evidence [by which
is evidently meant legal sufficiency] to support the conviction." (54) We then identified the
applicable legal sufficiency standard to be that which the Supreme Court had just articulated
in Jackson v. Virginia. (55) Thus, in the course of three short years we stripped both ourselves
(in our capacity as a direct appellate court in capital cases) and the intermediate courts of
appeals of the fact jurisdiction we had always previously considered to be inherent in the
respective courts' "appellate jurisdiction," as conferred by Article V, Sections 5 and 6 of the
Texas Constitution. (56)

F. Factual Sufficiency Makes a Comeback


 In 1994, in Bigby, we expressly overruled White, and reinvigorated our own appellate
jurisdiction to review facts and make factual-sufficiency determinations. (57) The question in
Bigby was whether this Court had authority to conduct a factual review of a jury's
determination of an affirmative defense. In addressing this question, we corrected the
mistakes of White and Combs to hold that criminal appellate courts in Texas have always had
factual review jurisdiction, conferred by both the Texas Constitution and by Article 44.25
and its predecessors. (58) The reality is that our factual review jurisdiction had never
disappeared. It was merely temporarily obscured by White and Combs. Neither of those
opinions ever disputed (or even referenced) our inherent constitutional fact jurisdiction, or
purported to overrule the plethora of previous cases recognizing our constitutional and
statutory authority to conduct fact reviews. (59)

 Clewis simply continued the restoration of appellate factual jurisdiction in criminal
cases by expressly holding that the courts of appeals may review the evidence for factual
sufficiency as well as legal sufficiency-effectively overruling the footnote in Combs, albeit
sub silentio. (60) And we finished the job in Jones v. State, (61) when we extended our own fact
jurisdiction to permit a review of the factual sufficiency of the evidence to establish the guilt
of the accused in capital murder cases, and not just to review whether the jury's rejection of
an affirmative defense was against the great weight and preponderance of the evidence, as
in Bigby. Thus, the law as it stands today in Texas is that, in the direct appeal of a criminal
case, the courts of appeals (and this Court, in the direct appeal of capital murder cases) have
the statutory and constitutional authority to entertain a claim of factual insufficiency and to
reverse the conviction and remand the cause for a new trial in the event they find the
evidence to be, indeed, factually insufficient.

 III. FACTUAL-SUFFICIENCY REVIEW SINCE CLEWIS


 The basic ground rules for post-Clewis factual-sufficiency review were well
articulated in Cain v. State. (62) First, the appellate court should be mindful that a jury has
already passed on the facts, and convicted, and that the court should never order a new trial
simply because it disagrees with the verdict, but only where it seems to the court to represent
a manifest injustice, though supported by legally sufficient evidence. (63) Second, the appellate
court should support its judgment that a manifest injustice has occurred by explaining in
exactly what way the State's evidence, while legally sufficient, is nevertheless too weak to
withstand scrutiny, or in exactly what way it perceives the conflicting evidence greatly to
preponderate against conviction. (64) Third, although viewing all the evidence, as it would in
a legal sufficiency analysis, the appellate court should review that evidence, not in the light
most favorable to the verdict, but in a neutral light. (65)

 The only substantive adjustments to these basic ground rules have come in two cases,
Johnson v. State, (66) and Zuniga v. State. (67) In Johnson, the Court broke down factual-sufficiency analysis into two prongs. The first prong asks whether the evidence introduced
to support the verdict, though legally sufficient, is nevertheless "so weak" that the jury's
verdict seems "clearly wrong and manifestly unjust[.]" (68) The second prong asks whether,
considering conflicting evidence, the jury's verdict, though legally sufficient, is nevertheless
against the great weight and preponderance of the evidence. (69) This adjustment simply brings
the Clewis standard in line with civil practice, and with factual-sufficiency review in criminal
cases from the earliest days in Texas. After all, the Johnson adjustment, in its essentials, 
merely reflects the first and fourth "rules of practice" set out more than a hundred and twenty
years ago in Walker.


IV. ZUNIGA


 The far more radical adjustment was made in Zuniga. Zuniga represents an attempt,
not to alter the factual-sufficiency standard of previous cases, but to re-articulate it in terms
specific to the particular level of confidence that due process requires in criminal cases, viz:
proof beyond a reasonable doubt. Our express intention was to eschew any formulation of
the standard that would incorporate language of "preponderance of the evidence," since that
is a lesser burden of proof, not applicable in criminal cases. Thus we said:

 There is only one question to be answered in a factual sufficiency review:
Considering all of the evidence in a neutral light, was a jury rationally justified
in finding guilt beyond a reasonable doubt? (70)


Thus articulated, the standard for factual sufficiency seems barely distinguishable from a
Jackson v. Virginia legal sufficiency analysis. The only apparent difference is that the
appellate court, using the Zuniga standard, is to measure the rationality of the jury's verdict
by viewing all of the evidence from a "neutral" standpoint, rather than "in the light most
favorable to the verdict." That is to say, it need not indulge the presumption that is built-in
to a legal sufficiency analysis that the jury, "faced with a record of historical facts that
supports conflicting inferences . . . resolved such conflicts in favor of prosecution[.]" (71)

 Nevertheless, the distinction is a real one, and might have served as an acceptable
reformulation of the factual-sufficiency standard, standing alone. But we apparently created
a problem when we elaborated on our reformulation, first in the following vein:

 However, there are two ways in which the evidence may be insufficient. First,
when considered by itself, evidence supporting the verdict may be too weak
to support the finding of guilt beyond a reasonable doubt. Second, there may
be both evidence supporting the verdict and evidence contrary to the verdict. 
Weighing all the evidence under this balancing scale, the contrary evidence
may be strong enough that the beyond-a-reasonable-doubt standard could not
have been met, so the guilty verdict should not stand. (72)


This reformulation of the standard begins to make sense only when one remembers that it is
not a legal sufficiency standard. In other words, we are not now asking whether the jury
could rationally have found the defendant guilty beyond a reasonable doubt, having
presumably resolved all conflicts or ambiguities in the evidence in favor of the prosecution. 
(Presumably the jury has, or in most cases the appellate court would not have reached the
issue of factual sufficiency, having acquitted the defendant.) The fact is that rational people
can disagree whether even legally sufficient evidence is persuasive to a level of confidence
beyond a reasonable doubt. "That rational men disagree is not in itself equivalent to a failure
of proof by the State, nor does it indicate infidelity to the reasonable doubt standard. Jury
verdicts finding guilt beyond a reasonable doubt are regularly sustained even though the
evidence was such that the jury would have been justified in having a reasonable doubt[.]" (73) 
This means that an appellate court can both affirm the legal sufficiency of the evidence, and
at the same time harbor its own, admittedly subjective, reasonable doubt about the accuracy
of the jury's verdict.

 Thus, when the Court in Zuniga referred to evidence that is factually insufficient
because it is "too weak to support a finding of guilt beyond a reasonable doubt[,]" we must
have meant that the evidence would not satisfy the appellate court's own threshold of proof
beyond a reasonable doubt. And when the Court said that "the contrary evidence may be
strong enough that the beyond a reasonable doubt standard could not have been met," we
must have meant that the weight and credibility of the exculpating evidence is so great that
the appellate court itself feels compelled to harbor a reasonable doubt as to the defendant's
guilt. This understanding is problematic, however, because it smacks of an appellate court
simply opting to "disagree" with the jury's verdict-something we have never before tolerated
even in the "factual sufficiency" context. That an appellate court would have acquitted a
defendant on the same facts that convinced a rational jury to convict has not ever, by itself,
met our criteria of a "manifest injustice."

 The problem is exacerbated by what our Zuniga opinion says next:

 This standard acknowledges that evidence of guilt can 'preponderate' in favor
of conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt. Stated another way, evidence supporting guilt can
'outweigh' the contrary proof and still be factually insufficient under a
beyond-a-reasonable-doubt standard. (74)


This re-re-articulation of the standard is particularly troublesome. The first sentence (upon
which the court of appeals relied in the instant case) suggests that evidence legally sufficient
to convict may still be factually insufficient if it merely "preponderates" in favor of guilt,
rather than establishing guilt beyond a reasonable doubt. Thus, even if, viewing all of the
evidence in the light most favorable to the verdict, the appellate court concludes that a
rational jury could find guilt to the requisite level of confidence beyond-a-reasonable-doubt,
that same appellate court should order a new trial if, viewing that same evidence neutrally,
it is subjectively convinced by no more than a preponderance of the evidence. The second
sentence suggests that even when the State's evidence of guilt is more weighty and more
credible than the defendant's contrary evidence, and therefore "preponderates" in favor of
guilt, an appellate court could find that it does not meet its own threshold level of confidence
beyond a reasonable doubt, and reverse and remand on that basis.

 It is in the very nature of a factual-sufficiency review that it authorizes an appellate
court, albeit to a very limited degree, to act in the capacity of a so-called "thirteenth juror." 
Indeed, it is this characteristic of a factual-sufficiency review that justifies the conclusion that
a reversal on the basis of factually insufficient evidence has no jeopardy consequences. (75) But
prior to Zuniga, as our review of the origins and history of factual-sufficiency review has
demonstrated, we always required a high level of skepticism about the jury's verdict in order
to justify granting a new trial. Any holding that a criminal appellate court can reverse and
remand for a new trial even when the evidence "preponderates" in favor of a conviction is
inconsistent with that historically required high level of skepticism.

 We therefore disavow such language in Zuniga and reiterate that it is not enough that
the appellate court harbor a subjective level of reasonable doubt to overturn a conviction that
is founded on legally sufficient evidence. An appellate court judge cannot conclude that a
conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of
evidence admitted, he would have voted to acquit had he been on the jury. Nor can an
appellate court judge declare that a conflict in the evidence justifies a new trial simply
because he disagrees with the jury's resolution of that conflict. We have always held that an
appellate court must first be able to say, with some objective basis in the record, that the
great weight and preponderance of the (albeit legally sufficient) evidence contradicts the
jury's verdict before it is justified in exercising its appellate fact jurisdiction to order a new
trial. We have never, at least until Zuniga, interpreted the factual review jurisdiction of
criminal appellate courts to include the ability to overturn a jury verdict and remand for a
new trial when the greater weight and preponderance of the evidence actually favors
conviction! To the extent that Zuniga may be to read to allow such a reversal, it was flawed
at the outset and has a clear potential to cause far more reversals for factual insufficiency
than was ever contemplated by either Clewis or the many cases within the last 125 years that
have inquired into factual sufficiency. (76) It is therefore, to that extent, overruled.

CONCLUSION


 Accordingly, we reverse the judgment of the court of appeals and remand the cause
to that court for a reconsideration of the appellant's factual-sufficiency claim in light of this
opinion.


Delivered: October 18, 2006

Publish
1. 144 S.W.3d 477 (Tex. Crim. App. 2004).
2. Clewis v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996).
3. Watson v. State, 160 S.W.3d 627 (Tex. App.--Waco 2005).
4. Id. at 630-31.
5. Id. at 630.
6. Tex. Code Crim.Proc. art. 44.25. See "Old Code" (1856) Art. 744; 1879 Code Art. 870;
1895 Code Art. 905; 1911 Code Art. 939; 1925 Code Art. 848.
7. 785 S.W.2d 146 (Tex. Crim. App. 1990).
8. 892 S.W.2d 864 (Tex. Crim. App. 1994).
9. Dallam 376 (Tex. 1841).
10. Dallam 407 (Tex. 1841).
11. 43 Tex. 390 (1875).
12. Bailey v. Haddy, supra, at 378; Republic of Texas v. Smith, supra, at 410-11; Bishop v. State,
supra, at 399-401 (citing Old Code (1856) Art. 744). Cf. Carter v. State, 656 S.W.2d 468 (Tex.
Crim. App. 1983) (construing Smith and Bishop to confer appellate jurisdiction "to revise the whole
case upon the law and facts," so as to authorize criminal appellate courts to entertain unassigned,
fundamental error on appeal).
13. 892 S.W.2d at 871-72. On its face, Bigby might appear to be a plurality opinion. Only
Judge Meyers, the author, adhered to the entire opinion. Judge White filed a concurring opinion,
however, in which he expressly joined the entire opinion except for its treatment of the appellant's
eighth point of error, a voir dire issue. Four other judges joined Judge White's concurrence, making
a six-judge majority for the resolution of the appellant's first point of error, in which the Court
determined it had jurisdiction in a capital appeal to conduct a factual-sufficiency review. Judge
Campbell did not participate. One judge, Judge Baird, concurred in the result without joining any
portion of Judge Meyers's opinion. And Judge Clinton filed a dissent to the Court's resolution of
the appellant's eighth point of error. Neither Judge Baird nor Judge Clinton expressed any view of
the factual-sufficiency issue, although their views might be considered evident from the fact that they
both later joined Judge Maloney's opinion for the Court in Clewis.
14. See note 6, ante; Bigby v. State, supra, at 874-75 n.5.
15. 44 Tex. 95 (1875).
16. 1 Tex. Ct. App. 488 (1877).
17. Clewis v. State, supra, at 138 (Clinton, J., concurring).
18. See March v. State, 3 Tex. Ct. App. 335, 336 (1877); Lockhart v. State, 3 Tex. Ct. App. 567,
570 (1878); Blake v. State, 3 Tex. Ct. App. 581, 587 (1878). With respect to these cases, Judge
Clinton observed in his concurring opinion in Clewis: "In each case the Court determined 'factual
sufficiency' on conflicting evidence according to whether, as variously phrased, the verdict or
judgment works an 'injustice' to defendant; is 'clearly and manifestly wrong;' or is 'manifestly
wrong.'" 922 S.W.2d at 138 n.4.
19. 14 Tex. Ct. App. 609 (1883).
20. Id. at 630 (emphasis supplied). Commenting on these "rules" (note the plural form), Judge
Clinton identified the first and fourth as "but variations on a 'factual sufficiency' theme." Clewis
v. State, supra, at 139 n.5. The second and third rules seem to articulate what we would now call
"no evidence" and "legal sufficiency" standards, respectively.
21. 14 Tex. Ct. App. at 629.
22. Id. at 629-30 (emphasis in the original).
23. Tex. Code Crim. Pro. arts. 36.13 & 38.04. Neither of these statutory provisions has been
substantively revised since they first appeared in the Old Code (1856) as Articles 593 and 643,
respectively.
24. Clewis v. State, supra, at 134-35.
25. E.g., Grimmett v. State, 22 Tex. Ct. App. 36, 42, 2 S.W. 631, 634 (1886) ("While the
evidence develops a strange, and to our minds somewhat improbable state of facts, still it is direct,
positive, and fills the measure of the law. * * * There being sufficient evidence to support the
verdict, and the verdict not being contrary to the great weight and preponderance of the evidence,
it is beyond the province of this court to set aside the conviction, however much we might doubt the
truth of the evidence.") (emphasis added).
26. Wilkerson v. State, 21 Tex. Ct. App. 501, 504-05, 2 S.W. 857, 857-58 (1886) ("the verdict
and judgment in this case are against the weight of the evidence . . ."); McLaren v. State, 21 Tex.
Ct. App. 513, 516, 2 S.W. 858 (1886) ("This conviction is not only not supported by, but is against
the evidence and the law."); Phipps v. State, 22 Tex. Cr. App. 621, 624, 3 S.W. 761, 763 (1886)
("The judgment of conviction for theft rendered in this case in the court below is wholly unsupported
by, and is contrary to, the evidence, as sent up to us in the record."); Montgomery v. State, 16 S.W.
342 (Tex. Ct. App. 1891) ("[B]ecause verdict is against the great preponderance of the evidence, the
judgment is reversed, and the cause remanded."); Laskey v. State, 18 S.W. 465 (Tex. Ct. App. 1892)
("Because the verdict and judgment is not supported by the evidence, but it clearly against the same,
the judgment is reversed, and the cause remanded.").
27. 20 S.W. 371 (Tex. Crim. App. 1892).
28. Id. at 373.
29. 65 Tex. Crim. 55, 143 S.W. 616 (1912).
30. Id. at 62, 143, S.W. at 620.
31. 94 Tex. Crim. 423, 251 S.W. 232 (1923).
32. 97 Tex. Crim. 52, 260 S.W. 195 (1924).
33. 94 Tex. Crim. at 425, 251 S.W. at 233.
34. 97 Tex. Crim. at 53, 260 S.W. at 196.
35. Id. Less than ten years later, in Stevens v. State, 121 Tex. Crim. 511, 50 S.W.2d 284 (1932),
this Court again found a rape victim's account to be both inherently incredible and uncorroborated,
and, relying for authority upon Green, and Article 848 of the intervening 1925 Code of Criminal
Procedure (now Article 44.25), once again reversed for factual insufficiency. See also, Ballard v.
State, 136 Tex. Crim. 188, 124 S.W.2d 131 (1939) (evidence insufficient in rape prosecution where
child victim's story is inherently suspect, and elderly defendant testifies he is impotent and did not
commit the offense); Lozano v. State, 154 Tex. Crim. 229, 226 S.W.2d 118 (1950) (evidence of rape
insufficient where child victim's story implausible, uncorroborated, there was no outcry, and
defendant denied the offense, even though child later found to have contracted gonorrhea). We do
not cite these cases here as exemplars of the appropriate exercise of factual-sufficiency review, but
only to show that this Court clearly considered it to be within its appellate authority to reverse and
remand a conviction for a new trial on that basis.
36. 94 Tex. Crim. at 425, 251 S.W. at 233.
37. 94 Tex. Crim. at 426, 251 S.W. at 233; 97 Tex. Crim. at 54, 260 S.W. at 196.
38. 140 Tex. Crim. 675, 146 S.W.2d 406 (1940).
39. See note 6, ante.
40. 140 Tex. Crim. at 680-81, 146 S.W.2d at 409-10.
41. See Clewis v. State, supra, at 144 n.13 (Clinton, J., concurring).
42. 443 U.S. 307 (1979).
43. Id. at 316-20.
44. Id. at 320-24.
45. Acevedo v. State, 633 S.W.2d 856, 857 (Tex. Crim. App. 1982).
46. Griffin v. State, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). 
47. 591 S.W.2d 851 (Tex. Crim. App. 1979).
48. Id. at 856.
49. Id. at 855.
50. Tex. Const. art. V, § 6 ("Provided, that the decision of said courts [of appeals] shall be
conclusive on all questions of fact brought before them on appeal or error."). See Bigby v. State,
supra, at 872, citing, inter alia, Cropper v. Caterpillar Tractor Co., 754 S.W.2d 646, 648 (Tex.
1988); Meraz v. State, supra, at 155.
51. This Court became a discretionary review court for non-capital criminal cases by virtue of
an amendment to Article V, Section 5 of the Texas Constitution, effective September 1, 1981.
52. 643 S.W.2d 709 (Tex. Crim. App. 1982).
53. Id. at 716.
54. Id. at 716 n.1.
55. Id. at 716-17.
56. Ironically, by the time we decided Combs in 1982, we had become a discretionary review
court for all non-capital criminal cases, and in Combs itself we reviewed a lower court of appeals
opinion in that capacity. Thus, any review on our part of a factual-sufficiency claim that the court
of appeals might have passed upon would have been barred by the factual conclusivity clause of
Article V, Section 6. See note 50, ante. But we were simply mistaken in Combs to rely upon White
to suggest that this Court lacked factual review authority in our capacity as a direct appeals court,
and equally mistaken to hold that the court of appeals also lacked jurisdiction to review factual
sufficiency. See Clewis v. State, supra, at 144-46 (Clinton, J., concurring). We were correct to hold,
however, that the factual conclusivity clause does not bar our review of a legal sufficiency claim in
a petition for discretionary review.
57. 892 S.W.2d at 874-75 ("Clearly under either the statute [Article 44.25 of the Code of
Criminal Procedure] or the constitution [
i.e., factual review which is inherent in our constitutionally-conferred appellate jurisdiction] we are empowered to review a case both upon the law and the facts. 
Therefore, White v. State, 591 S.W.2d 851 (Tex. Crim. App. 1979) is expressly overruled, and any
reliance on that case by our Court in Meraz was misplaced.")
58. Of course we also recognized, in deference to the factual conclusivity clause of Article V,
Section 6, that this Court's factual review jurisdiction was limited to its capacity as a direct criminal
appellate court, in capital murder cases. Id. at 875.
59. In 1981 the Legislature amended Article 1820 of the Revised Civil Statutes of Texas to read: 
"The judgments of the Courts of Appeals in civil cases shall be conclusive in all cases on the facts
of the case." See Acts 1981, 67th Leg., ch. 291, p. 781, §§ 39, 40, eff. Sept. 1, 1981. This statute was
repealed in 1985, but it was re-codified in substance as current Section 22.225(a) of the Government
Code, which now reads: "A judgment of a court of appeals is conclusive on the facts of the case in
all civil cases." Tex. Gov't Code, § 22.225 (a). The fact that this provision does not mention
criminal cases does not mean the courts of appeals lack fact jurisdiction in criminal appeals. In the
very same legislation in which the Legislature amended Article 1820 in 1981, it also amended
Article 44.25 of the Code of Criminal Procedure to expressly confer fact jurisdiction on the courts
of appeals in criminal cases. See Acts 1981, 67th Leg., ch. 291, p. 817, § 134, eff. Sept. 1, 1981. (Of
course, at the same time, Article 5, Section 6 of the Texas Constitution was amended to make all
factual determinations in the courts of appeals conclusive. See Acts 1979, 66th Leg., S.J.R. No. 36,
p. 3224, adopted Nov. 4, 1980, eff. Sept. 1, 1981. This provision effectively limits this Court's
factual-review jurisdiction to capital cases, in which we are the court on direct appeal.)
60. Combs was earlier overruled to the extent that it seemed to equate a no-evidence standard
with the Jackson v. Virginia standard. Butler v. State, 769 S.W.2d 234, 239 (Tex. Crim. App. 1989).
61. 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).
62. 958 S.W.2d 404 (Tex. Crim. App. 1997).
63. Id. at 407.
64. Ibid.
65. Id. at 408.
66. 23 S.W.3d 1 (Tex. Crim. App. 2000).
67. 144 S.W.3d 477 (Tex. Crim. App. 2004).
68. 23 S.W. 3d at 11.
69. Ibid.
70. 144 S.W.3d at 484.
71. Jackson v. Virginia, supra, at 326.
72. Zuniga, supra, at 484-85.
73. Johnson v. Louisiana, 406 U.S. 356, 362 (1972).
74. 144 S.W.3d at 485.
75. See Meraz v. State, supra, at 156, citing Tibbs v. Florida, 457 U.S. 31, 42-3 (1982).
76. See Hammock v. State, 46 S.W.3d 889, 892-93 (Tex. Crim. App. 2001).